366                            In re Assignment of Henry Brocamp.

---

372                            CHATTEL MORTGAGE.

[Hamilton Circuit Court, January Term, 1887.]

Smith C. J., and Swing and Cox, JJ.

IN THE MATTER OF THE ASSIGNMENT OF HENRY BROCAMP.

1. STATEMENT IN RE-FILING CHATTEL MORTGAGE.
    The statement exhibiting the interest claimed by the mortgagee in a chattel mortgage given for money loaned, on the property, at the time of re-filing the same, under sec 4155, must state the amount of the claim in dollars and cents; and a statement giving the amount of the claim in ——(blank) dollars and —— cents, is not sufficient to maintain the validity of the mortgage against the creditors of the mortgagor, or against subsequent purchasers and mortgagees in good faith.

2. RE-FILING CHATTEL MORTGAGE AFTER GENERAL ASSIGNMENT MADE BY MORTGAGOR.
    A mortgagee in a chattel mortgage is not required to re-file his mortgage within the thirty days next preceding the expiration of the year of filing the same, where the mortgagor has made a general assignment for the benefit of his creditors before the year expires, and the property mortgaged has passed from the possession of the mortgagor to the assignee. For in that case the rights of all the parties have become fixed by the assignment, and the mortgagee will have to look no longer to the specific property mortgaged, but to the fund arising from its sale by the assignee under order of the probate court; and the re-filing of the mortgage on property, which is no longer in the possession of the mortgagor, and which may have been already sold by the assignee free of the lien of the mortgage, would be a vain thing.

ERROR to the Court of Common Pleas of Hamilton county.

SWING, J.

The matter in controversy in this case grows out of the assignment of Henry Brocamp. The real parties in interst in the suit are Lazarus Meiss and O. F. Moore, who were creditors of Henry Brocamp, and who each claimed a fund in the hands of the assignee by reason of the chattel mortgage that each held on the property.

The probate court found that the mortgage of Meiss was a valid mortgage and prior to that of Moore, and ordered the amount found due him first paid. The case was taken on appeal to the court of common pleas, which court found that the mortgage of Meiss was not properly re-filed, and was void as to other creditors, and the court further found that the mortgage of Moore was valid and the first lien, and it was ordered paid. In this Meiss claims there was error in the judgment of the court of common pleas to his prejudice.

The facts are in substance as follows: On the 7th day of December, 1882, Henry Brocamp borrowed of Joseph Lazarus $500, and to secure the same gave a chattel mortgage on certain personal property, and said mortgage was on said day filed for record.

On the 15th day of April, 1883, said Brocamp borrowed of said O. F. Moore $1,200, and to secure the same gave said Moore a chattel mortgage on the same property, which mortgage was filed for record April 27, 1883.

On the 5th day of December, 1883, said Lazarus re-filed, or attempted to refile his mortgage.

On the —— day of ————, 1884, Joseph Lazarus assigned his mortgage to Lazarus Meiss.

Afterwards, on the fifth day of February, 1884, said Brocamp made an assignment of all of his property to one Dunkmann, who took possession of the property, and converted the same into money.

Moore and Meiss and other creditors filed answers and cross-petitions in the probate court in the matter of the assignment, setting up their respective claims.

Moore did not re-file his mortgage within the thirty days next preceding April 15th, 1884, when the year from the filing thereof expired, and Moore had no actual knowledge of the mortgage to Lazarus.

The main question in dispute between the parties is as to the sufficiency of the re-filing of the mortgage by Lazarus. Lazarus attempted to re-file his mortgage by re-filing the original mortgage with the following indorsement on the back of it: "State of Ohio, Hamilton County, ss.: Joseph Lazarus being sworn says, that he is the within named mortgagee; that by virtue of the within named mortgage, he has a just and lawful interest as mortgagee in the property described in said mortgage, which now amounts, principal and interest, to —— dollars and —— cents; that he verily believes said amount is just and unpaid, and that said interest in said property remains unimpaired to secure said sum with interest and costs that may accrue, according to the terms mentioned in said mortgage."

Giving the words their common, ordinary meaning, what did Joseph Lazarus say by the above?

In the first place he says he is the within named mortgagee and has a just and lawful interest as such in the property described; that the amount of his interest, including principal and interest, is ——dollars and ——cents; that he verily believes said amount is just and unpaid. What amount? Certainly the blank dollars and blank cents. That said interest in said property remains unimpaired to secure said sum with interest and costs according to the terms contained in said mortgage.

It is claimed on behalf of Meiss, the assignee of Lazarus, that in this last sentence the assertion is made that the amount then due on the mortgage is the amount of the original mortgage, viz.: $500, together with the interest thereon; but as such does not seem its proper construction, as we read it, the interest which he says is unimpaired, is the interest which he says above he has in the property by virtue of the mortgage, and the said sum referred to is the blank dollars and blank cents above mentioned.

We can not think that by this last sentence it was intended to make a statement as to the amount then due on the mortgage, and thus supply the dolla and cents omitted in the first statement.

It seems to our minds evident, that the person who drew the indorsement on the mortgage intended that the blank before dollars and the blank before cents should be filled in with the amount then due, and that this amount, when stated, was the principal allegation in the indorsement upon which the others depended.

It seems to us equally evident that it was not filled up, by reason of some accident or mistake on the part of Mr. Lazarus, or some one else who was acting for him, and this mistake is a fatal one to the mortgage, as affects creditors of the mortgagor or subsequent purchasers or mortgagees in good faith, as is provided in sec. 4155, Rev. Stat., which is as follows: "Every mortgage so filed shall be void, as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof. unless, within thirty days next preceding the expiration of the said term of one year, a true copy of such mortgage, together with a statement verified, as provided in the last section, together with a statement exhibiting the interest of the mortgagee in the property at the time last aforesaid, claimed by virtue of such mortgage, is again filed in the office where the original was filed." Clearly, the statement required by this section must contain an allegation as to the amount then due on the mortgage; but in this mortgage it was left blank.

We come next to the consideration of the rights of Moore.

In the first place, he was a mortgagee without actual notice of the mortgage of Lazarus, the only notice he had of it being constructive, and under the decision of Day v. Munson, 14 O. S., 488, he was a mortgagee in good faith.

The only remaining question is, did Moore lose his lien by reason of his not having re-filed his mortgage within the thirty days next preceding the expiration of the time of one year, as required by the above section?

It does not appear from the record in what condition this property was at the expiration of this period; but prior to this time, in the first part of February, 1884, Brocamp had assigned this property to one Dunkmann, and under the decision of Lindemann v. Ingham, 36 O. S., 1, the assignee became owner of the property, and the mortgagee was compelled to look to the fund, and had no right or control over the property. If it had remained in the hands of the mortgagor he would have had—but when the assignment was made this right was taken away from him, and he could only look to the probate court and the fund in the hands of the court, for his rights under the mortgage.

To have re-filed his mortgage could not have affected the assignee: he may have long before the time when the mortgage should have been re-filed, disposed of the property as he had a right to do, and he was only answerable to the mortgagee for the fund arising from the sale. And the re-filing could not have affected the mortgagor, for he had long since ceased to hold any interest in it. Why then compel this party to do a vain thing? We are unable to see any reason for doing so. In our judgments the rights of the parties were fixed by the assignment. At that time Moore's lien was good and the first lien on this property, and by reason of the assignment his right having been transferred to the fund, it became the best lien on the fund, and as this is in accordance with the decision of the court below, that judgment will be affirmed.